UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID MICCICHE,

      Petitioner,

v.                                    Case No. 8:18-cv-1270-MSS-JSS

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## O R D E R

Micciche petitions for the writ of habeas corpus under 28 U.S.C. § 2254 and challenges his state court convictions for possession of child pornography and video voyeurism, for which he is serving 10 years in prison. After reviewing the petition (Doc. 1), the response and appendix (Docs. 10 and 12), and the amended reply (Doc. 14), the Court **DENIES** the petition.

## PROCEDURAL HISTORY

An information charged Micciche with ten counts of child pornography possession, two counts of video voyeurism, and two counts of promotion of a sexual performance by a child. In exchange for Micciche's guilty plea to the child pornography possession and video voyeurism counts, the prosecutor offered a 10-year sentence, followed by 10 years of sex offender probation, and dismissal of the promotion of a sexual performance counts. The prosecutor would withdraw the global offer if Micciche deposed any witness or filed any motion. Facing twelve second-degree felonies punishable by 15 years and two third-degree felonies punishable by five years, Micciche entered the negotiated guilty plea.

At the change of plea hearing, Micciche through counsel stipulated to the following factual basis. On April 24, 2012, police executed a search warrant at Micciche's home. (Doc. 12-2 at 105) Police discovered numerous images of child pornography on a password-protected computer used by Micciche. (Doc. 12-2 at 105) The computer contained images of children under 10 years of age, including at least one image or movie of a sexual battery on a child under 5 years of age. (Doc. 12-2 at 105–06) Police also discovered a videotape containing images of Micciche's 12-year old step-daughter undressed. (Doc. 12-2 at 105) After waiving his constitutional rights, Micciche admitted that he downloaded child pornography and deleted the child pornography after viewing it. (Doc. 12-2 at 106) He also admitted that he knew that the videotape contained the images of his step-daughter because he placed a video camera in her bedroom. (Doc. 12-2 at 105)

The trial court accepted the parties' agreement and sentenced Micciche to 10 years of prison for six child pornography possession counts, 10 years of sex offender probation for the other four child pornography  possession counts, and a concurrent five years in prison for the two video voyeurism counts. (Doc. 12-2 at 7–26, 106–07) Micciche did not appeal his convictions. The post-conviction court denied Micciche's motion for post-conviction relief after an evidentiary hearing (Docs. 12-3 at 100–218 and 12-4 at 2–155), and the state appellate court affirmed. (Doc. 12-4 at 260) The post-conviction court also denied Micciche's motion to correct his sentence in which he challenged his designation as a sex offender (Doc. 12-4 at 270–71), and the state appellate court affirmed. (Doc. 12-4 at 317) His federal petition follows.

## STANDARDS OF REVIEW

**AEDPA**

Because Micciche filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act, AEDPA governs his claims. *Lindh v. Murphy*, 521 U.S. 320, 327 (1997). AEDPA amended 28 U.S.C. § 2254(d) to require:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). A decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Clearly established federal law refers to the holding of an opinion by the U.S. Supreme Court at the time of the relevant state court decision. *Williams*, 529 U.S. at 412.

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

**Ineffective Assistance of Counsel**

Micciche asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."

*Strickland*, 466 U.S. at 691. To demonstrate prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 691. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful. *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).

By pleading guilty, a defendant waives all non-jurisdictional claims arising before the guilty plea. *Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir. 1991) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). However, a defendant has the right to effective assistance of counsel before pleading guilty. *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985). Therefore, the two-part test under *Strickland* applies to an ineffective assistance of counsel claim arising before a guilty plea. *Hill*, 474 U.S. at 58.

Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citation omitted).

The state appellate court affirmed in a decision without a written opinion the post-conviction court's order denying Micciche relief. (Doc. 12-3 at 100–43) A federal court

"'look[s] through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume[s] that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

Because the post-conviction court recognized that *Strickland* governed the claims (Doc. 12-3 at 102), Micciche cannot meet the "contrary to" test in Section 2254(d). Micciche instead must show that the state court either unreasonably applied *Strickland* or unreasonably determined a fact.

**Ground One**

Micciche asserts that trial counsel was ineffective for not investigating a police report memorializing statements by Micciche during an interrogation at his home. (Doc. 1-1 at 2–10) He contends that the report misconstrued and misrepresented his statements to a detective, inaccurately made him appear as a "textbook pedophile," and incorrectly stated that he had confessed. (Doc. 1-1 at 2–10)

The post-conviction court denied the claim as follows (Doc. 12-3 at 102–16) (state court record citations omitted):

> . . . Defendant alleges ineffective assistance of counsel due to counsel's failure to investigate allegations of false information provided to the State in police reports considered to issue an arrest warrant and secure a conviction. Specifically, Defendant alleges on April 24, 2012, he was interviewed, post-*Miranda*, by Detective Karen DiPaolo of the Hillsborough County Sheriff's Office. Defendant alleges the interview took place during the execution of a search warrant that had been issued in connection with information compiled that led police to believe that specific images of child pornography, that had been purposely planted by law enforcement, had been viewed at Defendant's address.

> He alleges he waived his *Miranda* rights and chose to speak openly with Detective DiPaolo to protect his family and because he believed he had nothing to hide as his past behavior

had nothing to do with any intentional viewing of child pornography. He alleges the interview was conducted in his home and in the presence of Detective Heaverin. However, he alleges the interview was neither videotaped nor recorded and no transcription is available for review.

He alleges he openly admitted to viewing adult pornography, but not child pornography. He alleges he admitted that sometimes images of children would come up when he was searching for adult pornography, but [he] would quickly delete them when he realized they were of children in sexual situations. However, he alleges Detective DiPaolo drafted a document titled "Interview-suspect" and fabricated what would appear to be a confession to the allegations against Defendant. He alleges admissions that he provided pertaining to the viewing of adult/mature pornography were taken out of context and rewritten to apply to the child pornography in question.

Moreover, Defendant alleges he explained to his counsel that he did not confess to any crime involving child pornography and many statements provided in Detective DiPaolo's police report were either taken out of context or simply untrue. He alleges the false statements drafted in the detective's police report were material to the case and said statements were generated to create a confession when no confession was actually provided. He alleges this "confession evidence" was the single most pertinent piece of information provided to the State for the purpose of conviction.

He alleges his counsel's reliance upon the false police report was the functional equivalent of a failure to develop a viable defense to the alleged offenses. Defendant lists several examples of false statements and comments taken out of context which are contained in the detective's police report. He alleges he brought said fabrication to his counsel's attention, and she failed to follow through to protect Defendant's constitutional rights. He alleges had his counsel performed reasonably effective and investigated the allegations made by Defendant regarding these statements, a defense strategy could have been developed to refute these false statements, Defendant would not have entered a plea to an offense he did not commit, and he would have insisted on proceeding to a jury trial. After reviewing the allegations, the court file, and the record, the Court found Defendant's allegations were facially sufficient and ordered the State to respond.

In its response, the State asserted due to the nature of the allegations, it concedes to the need for an evidentiary hearing on [this claim]. After reviewing the allegations, the State's response, the court file, and the record, the Court found Defendant was entitled to an evidentiary hearing on this claim.

At the evidentiary hearing, Defendant testified he retained Ms. Deborah Moss to represent him. He testified that after Ms. Moss advised him that there was no hope and he had to settle, [Mr.] Lauro was brought in to look over the documents to see if there was anything overlooked. He testified he met with Ms. Moss or [Mr.] Lauro three times prior to entering his plea. He admitted he had the opportunity to review the State's discovery and [to] ask them questions he had or issues he was concerned about.

He admitted the police reports were part of the State's discovery. He testified page 31 of the police report listed him as a youth pastor, which he was not. He testified the police report erroneously listed the interview was conducted in his daughter's bedroom, but it was conducted in his bedroom. He further testified the police report indicates he stated he is the only one who uses that computer in the office, but [he] actually stated it was the only computer he uses. He testified the police report erroneously indicated the computer was password protected and nobody else had access to it. However, he testified the computer was actually password protected on startup only and it was left on all the time since it was a server. He testified he stated pornography was morally wrong, but the report indicated he stated he viewed child pornography and he knew what he was doing was wrong. He further testified regarding other falsities contained within the police report.

When asked about Ms. Moss'[s] response after he indicated to her that there were false statements in the police reports attributed to him, he responded as follows:

[Petitioner:]     When I told her everything that was wrong with the police report, she used the term "perfect storm," basically saying that the evidence in here would be impossible to prove; that it's my word against theirs and used the term "perfect storm," as, again, you know, basically, it's not something we can overcome.

He testified his wife Ms. Peyton was present at the time he gave his statement to law enforcement. He admitted he ultimately found out that the fact he was misquoted in his statement did matter. He further testified as follows:

> [Petitioner:] Because I — we didn't know anything about what was necessary to be proven. I was told by Ms. Moss, basically, "You're guilty. Sign this paper." I didn't know anything about prongs that had to be proven. I didn't know any, you know, in order to get this conviction, the State has to prove this, this, and this, and we didn't know anything about that. I didn't know anything about that until I did my own research.

He testified if he had known he could challenge the false information, he would have gone to trial.

On cross-examination, he admitted he advised Ms. Moss of all the falsities in the police reports and wanted her to investigate or have the report stricken from evidence as untruthful. He admitted it would have required him to go to trial. However, he testified Ms. Moss advised him that it was not worth going to trial and [he] did not stand a chance because just clicking on something is enough to be [ ] convict[ed]. He further testified Ms. Moss could have challenged the statements by conducting depositions to see what the investigators meant when they wrote the report.

At the same hearing, Defendant's wife Ms. Sally Peyton testified and denied being present during the interview when the police were at the house and questioned Defendant. She denied hearing Defendant when he was talking to the police about the case. She did not recall whether the computer in the office was password protected because it was always on and logged in. She admitted other people used the computer in the office, including Defendant's son, family members, friends of family members, and herself. She testified Defendant's son was a teenager at the time.

She testified she knew Defendant put a camera in [K.T.'s] bedroom to catch his son Little David in the act of stealing

9

money from the girls or from the boys. She admitted they told [K.T.] about the camera.

She testified the computer in the office was mostly used to download music. She testified she did not remember ever speaking directly to Ms. Moss. She admitted to being aware of the video of [K.T.] after the detectives brought it to her attention. She testified she thought [K.T.] was around twelve years old in that video.

At the same hearing, Ms. Deborah Moss testified regarding her training and experience in criminal law. She admitted to representing Defendant. When asked about her understanding of the charges against Defendant at the beginning of her representation, she responded as follows:

> [Trial counsel:]   I met Mr. Micciche shortly after the warrant was executed at his house. He came to our office. It was my understanding that he had numerous — he had been arrested for numerous counts of child pornography, possession of child pornography. At that time, he had also, I think the following day, they came to his house; they executed the warrant, and then it was either the following day or a few days later, they came back and rearrested him for video voyeurism.

She testified she met with Defendant ten to fifteen times because he was out on bond and would go to her office to speak with her. She further testified she spoke with his wife.

She admitted to making a demand for discovery, obtaining all the police reports, and reviewing them with Defendant. She testified Defendant told her that he admitted to law enforcement that he masturbated to pornography, but he told them he did not masturbate to child pornography. However, she testified Defendant did not dispute that he told law enforcement he was the only one to ever use a particular computer in his home.

She testified Defendant indicated to her that he was the only user of the computer that was the subject of where the child porn images were located and that it was password protected. She denied that he ever indicated to her that the password

protected computer was left open and did not necessitate [a] password [to] use. She testified the computer in question was located in kind of an office bedroom area.

She testified she discussed with Defendant who else would have access to this computer and might have downloaded the child porn, but it appeared that he was the only person in the household with access. She further testified, "I do not believe there was any indication that anyone else had ever used that computer [ ]." When asked if Defendant ever indicated to her that the password, once entered, would be allowed to remain open and did not necessitate additional password entry, she responded, "[n]o, I mean, we didn't — no. I mean, there really — that really didn't seem to be an issue at all; that it was his computer. He was the one who had it, the password, and that other people did not use it."

When asked what [she] told Defendant in terms of how law enforcement became involved in this case, Ms. Moss responded as follows:

[Trial counsel:]    Um, well, I mean, law enforcement has the ability to follow these digital images of known child pornography; images that they know that [show] these children are underage, that they have [hash] values and SHA values, and that they can actually identify these digital images as they pass through their servers. I believe in this case, it was a server in Wyoming that had picked it up and they are able to follow these images to the IP address.

She testified the child pornography images were seen by law enforcement going to this IP address between August 2011 and April of 2012. She testified when she and Defendant discussed this time frame, he indicated to her he was downloading large files of video and audio files and thought maybe some of those images had come in accidentally through that.

However, she denied that they discussed his computer being made up of parts scavenged from other locations or other computers. She testified Defendant never indicated to her that portions of his computer could have contained items he was unaware of. She admitted Defendant indicated to her that he was the only one using that particular computer. She testified

they discussed the discovery. She testified Defendant advised
her he thought the files could have accidentally ended upon on
his computer through FrostWire or LimeWire.

She testified law enforcement located the images going to the
particular IP address through file sharing such as LimeWire and
FrostWire and all this information was contained within the
application for the search warrant in the search warrant itself.
She testified based on his explanation on how the files may have
ended up on his computer, she hired expert John Magliano.
However, she testified she asked Mr. Magliano not to write a
report because he had nothing beneficial for Defendant and the
information he could have provided was actually harmful to
Defendant. When asked about John Magliano's evaluation, she
responded as follows:

[Trial counsel:]        Well, I was given, through discovery, the
                        FDLE — FDLE has software that they
                        attach to a computer that prints out all of
                        the searches, all of the files that were
                        viewed. I mean, it is an exhaustive list. It
                        was contained on disks. I provided that to
                        him and what he told me was — is that —

[Prosecutor:]           He, Mr. Micciche, you mean?

[Trial counsel:]        No, no. My expert.

[Prosecutor:]           Okay.

[Trial counsel:]        When I spoke to him about — once he
                        reviewed it — he indicated to me that
                        there were active searches during the time
                        period[s] that were alleged, that he — that
                        were for child pornography. He's done a
                        lot of this work. PTHC, Preteen Hard
                        Core, [s]everal Google searches for Lolita,
                        that he believed that the State would be
                        able to show through the introduction of
                        this evidence that there were active
                        searches on that computer for child
                        pornography.

She admitted the expert's evaluation was consistent with what
she read in the application for search warrant. She testified she
advised Defendant about what the expert found and Defendant

told her that he could not open those files and his computer would shut down.

She testified although Mr. Magliano did not generate a report, he provided her with a January 20, 2013, letter outlining some other avenues she may want to explore. The letter was admitted as State's exhibit 4. Ms. Moss read portions of the letter during the following:

[Trial counsel:]      It says, "After extensively reviewing all the information collected and examined of the evidence collected from David Micciche, I have not found any defenses that would help his case. I have also found references to other data that was not used against him that could be included in a trial." He indicated to me a surprise that my client was only charged with ten counts based on what his examination of this — of the documents I had provided —

[Prosecutor:]         Excuse me. Of the documents or the hard drive? Did he get to examine the actual hard drive?

[Trial counsel:]      No. He examined the — the, basically a case file printed out from his FDLE report and the discovery, but he — he said — he just kind of went on, but here are some other things, "Was the Defendant in total control of the computer at all times?" "Was the hard drive that was in the computer used and purchased with data already in it?" Okay, this is — I had never — there had never been any indication of that. "And was data downloaded on the hard drive when the Defendant was not at home and can [we] prove it?" and we —

She testified she and Defendant reviewed all the points raised by Mr. Magliano in his letter and it was her understanding that the computer in question was under his control at all times, which was confirmed in the police report because it was asked by the detectives of all the people in the home. She further testified she never had any indication that the hard drive on the

computer was used and purchased with data already on it and had come from somewhere else.

She admitted to having discussions with Defendant about unallocated space. However, she denied that Defendant indicated to her that unallocated space would be used as an area of defense in this case. She testified it was her understanding that with the unallocated space, if you delete a file, there is still evidence of that file that can be stored in this unallocated space. However, she denied that Defendant ever indicated to her that somebody other than himself would have downloaded and deleted these files leaving them in unallocated space.

She testified she believed the ten counts of child pornography were of items previously deleted and located on the unallocated space during the time that was alleged and there were active searches for that period on his computer. When asked what was it that would have connected those older images to Defendant in 2012, she responded, "[t]he searches, Google searches, Yahoo searches that my expert said were very plentiful, and that there were many, many, many, many images." She admitted to viewing the items of child pornography and described them as follows:

[Trial counsel:]          I saw — I asked to see every — the image or the — what was on my client's computer that he was being charged with. Every — every count, so I was — I met Detective Grow and I believe it was a gentleman, Mr. Haverand [ ], down at Falkenburg Road. They had set up, um, basically, on a computer, where they were able to take me to what looked like a thumbnail image and [ ] they would click on it, and I asked if that was what was found on my client's computer, and they said the thumbnail was what was on the computer, and that this was what they could show had been there but deleted . . .

She testified that on the thumbnail images, there was a baby in diapers being digitally penetrated, obviously prepubescent children engaged in sexual acts, including oral sex and a prepubescent child being penetrated by an adult penis. She testified the images she saw were consistent with the nature of the searches law enforcement indicated Defendant had actively

14

engaged in and were consistent with what her expert advised her.

When asked if Defendant ever indicated to her that he had a defense and there was no known possession of child pornography, Ms. Moss testified as follows:

> [Trial counsel:]      Well, we discussed that — that issue of they just ended up when I was downloading large files from FrostWire or LimeWire, that somehow they just snuck in there. My expert said no, that's not how this works. These large file-sharing programs, if you type in, "I want to see Gone with the Wind," and that's typically what they're used for is to download large video and audio files, that Gone with the Wind will go out to a bunch of different computers and will take pieces of Gone with the Wind from everybody's computer, but it won't take Lolita — it — it won't pick Lolita up in that Gone with the Wind file.

She further testified, "[b]ut there was no mistake that this was being searched for and it was on his computer. That — my expert was like there is no mistake here[,]" and she advised Defendant of that.

She testified she did not depose the detectives because she did not believe there was anything that was highly in dispute or that needed clarification outside the police report. She testified she received an offer of ten years' prison followed by ten years' probation, but if they wanted to litigate, the offer was off the table. She testified she conveyed the offer to Defendant, but Defendant did not want to proceed to trial. She further testified as follows:

> [Trial counsel:]      I mean, early on, before we got this — I had him evaluated by Dr. Cotter. He had indicated to me that, yes, he had had a very serious pornography problem. Um, he denied the child pornography, but that he had had a serious pornography problem; he had gotten help for it. I mean, it was mostly dealing with mitigation of

> sentencing; not — not that these things
> don't — weren't on my computer.

When asked if Defendant ever indicated to her that he wanted to litigate the case because of the falsity of information contained in the police report, she responded, "[h]e disputed, in the police report Peggy Grow — and I actually spoke to her about this down at the — when I went down there — that he disputed that he told her that he masturbated to child pornography." She denied that Defendant ever relayed to her that the computer, although password protected, was not kept locked off. She testified she did not think Defendant disputed the fact that the police report indicated he said he recognized the file names from the recycling bin. She denied that Defendant ever wanted to litigate the case and go to trial. She testified although they may have discussed filing a motion to suppress, there was no suppression issue because it was a trial issue involving "he said, she said."

On rebuttal, Defendant admitted to reviewing the expert's letter with Ms. Moss. He testified he told Ms. Moss he was not in total control of that computer and told her nine people had continuous use of that computer. He testified the hard drive on that computer was used and purchased with data already on it. He testified he told Ms. Moss his computers are comprised of used parts collected from other computers.

After reviewing the allegations, the testimony, evidence, and arguments presented at the November 17, 2015, evidentiary hearing, the court file, and the record, the Court finds Ms. Moss'[s] testimony more credible than that of Defendant. Therefore, the Court finds Ms. Moss investigated the case, including the alleged false information. The Court finds to the extent that there were any discrepancies that could have been litigated, such would not have been proper in a pretrial motion, including a pretrial motion to suppress, because it was a "he said, she said" issue which would have been proper to address during a trial. However, the Court finds Defendant did not want to go to trial. Consequently, Defendant failed to prove that Ms. Moss acted deficiently or any resulting prejudice when she did investigate the alleged false information and was prepared to address any discrepancies at trial, but Defendant chose to enter a plea and did not want a trial. As such, no relief is warranted upon [the claim].

The post-conviction court found trial counsel more credible than Micciche at the evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Raheem v. GDCP Warden*, 995 F.3d 895, 929 (11th Cir. 2021) ("'Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review.'") (citation omitted). The post-conviction court accurately summarized trial counsel's testimony at the evidentiary hearing. (Doc. 12-3 at 49–71)

Trial counsel testified that Micciche disputed in the police report only that he told the detective that he masturbated while viewing child pornography. (Doc. 12-3 at 50–51, 68–69) Trial counsel asked the detective, "Are you sure that he said that or he just didn't admit that he had a pornography problem in general and he masturbated to pornography?" (Doc. 12-3 at 84) The detective responded, "No, I specifically asked about the child porn," and was "100 percent" certain. (Doc. 12-3 at 84)

Trial counsel retained an expert who examined data provided in discovery and found searches for child pornography around the time when the information charged Micciche with possessing child pornography. (Doc. 12-3 at 56–60) The searches were consistent with the type of child pornography that police discovered on the computer, which led the expert to conclude that Micciche did not mistakenly possess the child pornography. (Doc. 12-3 at 65–66) Trial counsel further viewed the images that police discovered on the computer to confirm that the searches were consistent with the type of child pornography on the computer. (Doc. 12-3 at 64–65)

The expert discovered no defenses to the child pornography possession charges. (Doc. 12-3 at 59–60) The expert suggested possible defenses which trial counsel reviewed with Micciche. (Doc. 12-3 at 60–62) Micciche did not tell trial counsel either that someone

else in the home may have downloaded the child pornography or that used parts in the computer contained child pornography without his knowledge. (Doc. 12-3 at 60–63)

Even if the statements in the police report were false, trial counsel could not have moved to suppress the statements before trial. Micciche challenged the content of those statements, not the manner that police secured those statements. (Doc. 12-3 at 70–71) To challenge the content of the statements, Micciche had to go to trial and testify. The prosecutor extended the 10-year offer but advised that she would withdraw the offer if the defense litigated any issue. (Doc. 12-3 at 67–68) Trial counsel conveyed the contingent offer to Micciche who decided that he did not want to go to trial. (Doc. 12-3 at 68)

In his reply, Micciche argues that notes by a detective show that his wife told the detective that nine people used the computer that contained the child pornography. (Doc. 14 at 4–5) Because the state court adjudicated the claim on the merits and the detective's notes were not part of the record before the state court, Micciche cannot rely on the detective's notes to support his claim on federal habeas. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.").[1] Even so, the detective's notes show that Micciche's wife told the detective that Micciche installed file-sharing software on his computer and kept the computer password-protected, and the children were not supposed to use the computer. (Doc. 1-2 at 3) The notes do not support his claim.

Because trial counsel investigated Micciche's disputed statement in the police report by asking the detective whether she was mistaken and investigated available defenses by

---

[1] Micciche contends that the evidence was available at the post-conviction evidentiary hearing, but post-conviction counsel refused to cross-examine trial counsel with the evidence. (Doc. 14 at 12) Micciche cannot demand relief for ineffective assistance of post-conviction counsel. 28 U.S.C. § 2254(i).

hiring a computer expert who found no defenses after reviewing the discovery, the state court did not unreasonably apply *Strickland*. *Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ."); *Puiatti v. Sec'y, Fla. Dep't Corrs.*, 732 F.3d 1255, 1279 (11th Cir. 2013) ("'In assessing the reasonableness of an attorney's investigation, . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.'") (citation omitted).

Ground One is **DENIED**.

**Ground Two**

Micciche asserts that trial counsel was ineffective for advising him to plead guilty instead of moving to sever the video voyeurism counts from the other counts and presenting a viable defense at trial. (Doc. 1-1 at 11–15) The post-conviction court denied the claim as follows (Doc. 12-3 at 116–23) (state court record citations omitted):

> Defendant alleges ineffective assistance of counsel when counsel misadvised Defendant to enter a guilty plea to two counts of video voyeurism when a viable defense existed to demand an acquittal at trial. Specifically, Defendant alleges to prove the offense of video voyeurism, the State was required to prove that Defendant recorded images of the victim, his step-daughter, without her knowledge or consent. He alleges the State was required to prove that Defendant did so for his own amusement, entertainment, sexual arousal, gratification, profit, or for the purpose of degrading or abusing his step-daughter. Defendant alleges neither of these essential elements could have been proven at trial and Defendant's counsel possessed evidence to the contrary.
>
> He alleges he had placed a camera in his step-daughter's bedroom years ago to catch his son stealing from her and his daughter. He alleges his step-daughter would have been available to testify that she had knowledge of the camera. He

alleges she wrote a letter to his counsel explaining and admitting to this knowledge of placement of the camera. He alleges her testimony would have given rise to doubt regarding the element that the recording was done without the victim's knowledge. He further alleges testimony could have been acquired from other family members who recalled the incidents of theft and the subsequent installation of surveillance equipment.

He alleges his counsel advised him that even if an acquittal could be obtained on these two counts, the remaining ten unrelated counts may be lost, and the State would seek a harsher penalty. He alleges the option to sever was never explored, nor was a trial strategy analysis performed to determine if proceeding on the severed counts would be a sound strategy. He alleges his counsel failed to contact his son David[,] Jr. and his wife. He alleges his wife could have testified regarding her knowledge of the equipment. He alleges he advised his counsel about his family members being able to testify on his behalf. However, he alleges his counsel advised him they could also be charged with the same crime.

He alleges his counsel was ineffective for failing to move to sever the voyeurism counts from the possession counts and for failing to investigate and inform Defendant that a viable defense existed. He alleges had his counsel advised him that the two counts of video voyeurism could have been tried separately and that a viable defense existed to the alleged offenses, Defendant never would have entered into a negotiated plea agreement with the State for those two counts. He further alleges he would have insisted on having a jury hear testimony and evidence proving that not only did he not commit this crime, but that the elements required to secure a conviction could not be proven beyond a reasonable doubt. He alleges but for counsel's misadvice, he would have proceeded to trial. After reviewing the allegations, the court file, and the record, the Court found Defendant's allegations were facially sufficient and ordered the State to respond.

In its response, the State asserted due to the nature of the allegations, it concedes to the need for an evidentiary hearing on [the claim]. After reviewing the allegations, the State's response, the court file, and the record, the Court found Defendant was entitled to an evidentiary hearing on this claim.

At the evidentiary hearing, Defendant admitted the voyeurism charges arose from a VHS tape found when police executed a search warrant at his house. He admitted the tape depicted his step-daughter in her room. He denied having seen the tape prior to entering his plea, but admitted he has since viewed the tape. He admitted she did not have clothes on in the video.

He admitted he told the police that he put a video camera in his step-daughter's room to catch his son who was stealing from family members. He admitted that he informed the step-daughter [K.T.] that the camera was in her room. He denied that Ms. Moss ever explained the elements of voyeurism to him. He denied placing the camera in her room for his own amusement, entertainment, sexual amusement, gratification, profit, or for degrading or abusing her. He testified if Ms. Moss had explained to him the elements of the voyeurism charges, he would not have taken the plea.

At the same hearing, Defendant's step-daughter [K.T.] testified when she was about twelve years old, they had a family meeting because things were going missing in the house and the solution they came up with was to put a video camera in her room. She testified she was eighteen years old when Defendant was first charged with possession of child pornography. She testified she was not aware that there was a recorded video of her coming out of the shower. She testified she forgot the camera was there.

On cross-examination, she testified she was about twelve years old and in about seventh grade when Defendant told her he was going to put cameras in her room. However, she testified nothing of hers had been stolen, but her stepsister, who she shared a bedroom with, had money that was missing. She admitted to writing a letter to the prosecutors which was admitted into evidence as State's exhibit 1.

She admitted the letter indicated her wallet was stolen in fourth or fifth grade and that was not the time frame when Defendant said he was going to install the camera in her bedroom. She admitted Defendant indicated to her that he was going to put the camera in her bedroom when she was in seventh or eighth grade. She admitted the video was taken during a timeframe when she was not having her wallet or property stolen. On redirect examination, she testified she believed her sister was a victim of a theft around the time period that the thefts occurred in her home.

At the hearing, Ms. Moss testified she discussed with Defendant the video voyeurism counts. When asked about what Defendant told her, she responded as follows:

[Trial counsel:]      Well, I saw the — when I went down, I was shown a video. It appeared that a 11, 12, 13 year-old girl was coming out of what appeared to be a bathroom, in various states of undress on two different occasions. He had — he had discussed with me that he had put cameras — a camera in her room to catch his son stealing. The problem I had was that there was only these two images. There wasn't any clothed people; there wasn't any — anything else, except these two, essentially two images of what I believe to be [K.T.] coming in from the bathroom and — from a shower with a towel and being undressed and dressing. She was young.

The video tape was admitted into evidence as State's exhibit 2.

She testified Defendant told her that he placed the camera in a light or ceiling fan, that it was not always running, and that he would hear the shower running and would hit the record button. She testified Defendant's version of why the camera was in the bedroom was problematic because if you are trying to catch someone stealing there would be other images that would be captured on something that was running as opposed to the two clips involving the victim coming out of the shower. She further testified to the following:

[Trial counsel:]      I told him that I thought that that was — that if it was truly just a matter of trying to capture somebody stealing, I thought it was a little odd that those cameras would be placed only in this room, and that those would be the only images caught on this, but I mean, he indicated to me that he had forgotten that that was even there; it was seven years prior, he wasn't a Christian before that happened.

She testified she did not speak to [K.T.] because she was told if she spoke to her, the deal was off the table and she advised Defendant of that. She testified Defendant did not want to pursue taking her deposition and further testified to the following:

| [Trial counsel:] | Because, from the get-go — from when we determined that these images — when my expert came back and told me these images were not accidentally — they didn't fall onto this computer accidentally. They were searched for; they were searched for during the time period that was alleged; he was surprised he wasn't charged with more, um, we were [ ] trying to negotiate and my fear about that video voyeurism was that that would be the item that would keep Judge Tharpe from agreeing to accept this below guidelines negotiation. |
|---|---|
| | . . . |
| | Because Judge Tharpe at the time had a reputation for not agreeing to go along with negotiated pleas between the State, and this was below guidelines. It wasn't significantly below guidelines, but it was below guidelines, and if we deposed [K.T.] — |

A letter Defendant sent to Ms. Moss advising her of some points regarding issues in his case was admitted into evidence as State's exhibit 3. She testified Defendant indicated in the letter that the video was never viewed by anyone, but she believed the video appeared to be edited. She testified that based on the totality of the information that she had, she did not find Defendant's explanation about how the video came to be in existence and why it was where it was at to be reasonable. She further testified, "I told him I thought it would be difficult for a jury to understand that or to believe that." However, she testified she expressed a willingness to him to go to trial and it was his decision.

After reviewing the allegations, the testimony, evidence, and arguments presented at the November 17, 2015, evidentiary

hearing, the court file, and the record, the Court finds Ms. Moss'[s] testimony more credible than that of Defendant. The Court relies on the evidentiary hearing testimony set out in [the first claim] and in this claim. Therefore, the Court finds although Ms. Moss was aware that there were individuals who would have testified that they were aware that the camera was placed in the bedroom, Ms. Moss believed it would be difficult for a jury to understand or believe Defendant's version of the facts because there were no video clips of anyone else in the house just performing normal tasks, but only two video clips of [K.T.] coming out of the shower undressed. The Court finds the fact that [K.T.] had consented to the placement of the cameras in her room several years prior did not negate any element of the video voyeurism charges involving the video taken several years later.

Moreover, the Court finds regardless of the strength of his case, Ms. Moss was willing to go to trial on the video voyeurism charges. However, the Court finds the State had made Defendant a plea offer to resolve all charges and if he chose to litigate the video voyeurism charges, the State indicated the plea offer would be off the table. The Court finds Defendant did not want to go to trial on any of the charges. Consequently, the Court finds Defendant cannot prove that Ms. Moss acted deficiently or any resulting prejudice when Ms. Moss was willing to go to trial on the charges, but based on the strength of his case, he chose to enter the plea. The Court further finds the fact that [K.T.] consented to the placement of the cameras several years earlier did not provide a viable defense to the video voyeurism charges for the video taken several years later. The Court finds such would not have produced an acquittal at trial. As such, no relief is warranted upon [the claim].

The post-conviction court found trial counsel more credible than Micciche at the evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Raheem*, 995 F.3d at 929. The post-conviction court accurately summarized trial counsel's testimony at the evidentiary hearing. (Doc. 12-3 at 70–84) The trial prosecutor extended the 10-year offer in exchange for a guilty plea to both the child pornography charges and the video voyeurism charges. (Doc. 12-3 at 82) If trial counsel had moved to sever the video voyeurism charges or deposed Micciche's step-daughter to investigate the

charges, the prosecutor would have withdrawn the global plea offer. (Doc. 12-3 at 77, 81–82) Because Micciche told trial counsel that he did not want to go to trial (Doc. 12-3 at 83), trial counsel did not move to sever the video voyeurism counts.

Also, trial counsel testified that Micciche told her that he placed the camera in the bedroom to catch his son stealing. (Doc. 12-3 at 71) But Micciche also said that he turned on the camera to record when he heard the shower running. (Doc. 12-3 at 72–73) Trial counsel viewed the video, thought that the video appeared edited to show the undressed 12-year-old female only, and observed no clips of other individuals clothed completing routine tasks. (Doc. 12-3 at 71, 73–76) Relying on her experience as a trial lawyer, trial counsel advised Micciche that a jury would not believe that he installed the camera to catch his son stealing. (Doc. 12-3 at 76, 80–81) The step-daughter testified that she knew that Micciche had placed a camera in her bedroom but denied knowing that the camera recorded her coming out of the shower. (Doc. 12-3 at 37) The step-daughter explained that she must have forgotten that the camera was in her bedroom. (Doc. 12-3 at 37) Both the edited video and the step-daughter's testimony tended to prove that Micciche recorded the 12-year-old victim undressed for his own sexual arousal and gratification without her knowledge and consent. § 810.145(2)(a), Fla. Stat. (2009).

Lastly, the prosecutor charged Micciche with 10 counts of child pornography possession, each count was a second-degree felony punishable by 15 years, and Micciche faced an aggregate sentence of 150 years. (Doc. 12-3 at 155–56) §§ 827.071(5) and 775.0847(2), Fla. Stat. (2012). It is not credible to assert that Micciche would have rejected the significantly reduced 10-year offer and exposed himself to 150 years only to assert a weak defense at a bifurcated trial on the video voyeurism charges. *Hill*, 474 U.S. at 59–60.

Because Micciche wanted to accept the global plea offer and the prosecutor would have withdrawn that offer if trial counsel had deposed the witness or moved to sever the video voyeurism counts, trial counsel reasonably refrained from filing the motion to sever and the state court did not unreasonably apply *Strickland*. *Wofford v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984) ("[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial."); *Strickland*, 466 U.S. at 687–88 ("When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness.").

Ground Two is **DENIED**.

**Ground Three**

Micciche asserts that trial counsel was ineffective for not moving to suppress his confession memorialized in the police report. (Doc. 1-1 at 16–18) He contends that introduction of the confession at trial would have violated *Giglio v. United States*, 405 U.S. 150 (1972) because the confession was false. (Doc. 1-1 at 16–18) The post-conviction court denied the claim as follows (Doc. 12-3 at 123–26) (state court record citations omitted):

> Defendant alleges ineffective assistance of counsel due to counsel's failure to file a motion to suppress evidence in the State's possession that was falsely incriminating and would have given rise to a *Giglio* violation if presented at trial. Specifically, Defendant alleges his counsel was aware that the State possessed evidence that was falsified by the detective. Defendant alleges a viable defense existed to prove that Defendant could have been searching for adult pornography and had viewed the files in question without intending to download child pornography. He alleges his counsel could have

argued that, unlike the vast majority of offenders of this type, no images of child pornography were present or stored on any computer or in a hidden location in Defendant's home.

He alleges had his counsel filed a motion to suppress the police report and the police report [had] been excluded, it is doubtful that a conviction could have been obtained as no factual basis was available to support the plea, thereby making a reasonable probability that the outcome of the proceeding would have been different. He further alleges his counsel allowed the *Giglio* violation to go untested as the State would have been charged with constructive knowledge of the falseness of the confession. He alleges had his counsel filed a motion to suppress the false confession, a hearing would have been conducted and either the false confession would have been suppressed or the issue would have been preserved for appellate review. He further alleges he would not have entered the plea and would have proceeded to trial with a reasonable expectation of acquittal or reversal on appeal.

After reviewing the allegations, the court file, and the record, the Court found "failure to preserve issues for appeal does not show the necessary prejudice under *Strickland*." *Strobridge v. State*, 1 So. 3d 1240, 1242 (Fla 4th DCA 2009). However, because Defendant alleged if counsel had filed the motion to suppress, he would not have entered the plea and would have proceeded to trial, the Court found Defendant's allegations were facially sufficient and ordered the State to respond.

In its response, the State asserted this claim should be denied. Specifically, the State asserted suppression of a confession is a remedy available for violation of an accused's constitutional rights. The State asserted it is not a remedy for disputes regarding the credibility of the substance of the confession. The State asserted the issue which Defendant raises concerns whether the statements made to law enforcement were in fact the statements made by Defendant or statements taken "out of context and re-written to apply to the child pornography in question." The State asserted inasmuch as Defendant raises an allegation the detective misrepresented what Defendant said, Defendant raises an issue of credibility of the detective, not of the confession. The State asserted Defendant does not raise a claim that his statements were taken in violation of his Fourth, Fifth, Sixth, or Fourteenth Amendment constitutional rights. Therefore, the State asserted counsel had no basis upon which to seek suppression and cannot be faulted for fail[ing] to do so.

Moreover, the State asserted Defendant's claim that had counsel moved to suppress the evidence, a *Giglio* violation would have occurred is likewise unfounded. The State asserted a *Giglio* claim is one which occurs when a prosecution witness testifies falsely to a material matter and the prosecution knows that the testimony is false. The State asserted the question Defendant presents is a question of credibility, which is a question for the trier of fact to determine. The State asserted by assuming the detective's version of the confession is false, Defendant improperly argues that a motion to suppress should have been filed and the resulting *Giglio* claim litigated when both issues are credibility issues for the trier of fact. Therefore, the State asserted [the claim] should be denied.

In his reply, Defendant asserted an issue regarding facts in dispute may form the basis for a motion to suppress. Defendant asserted his counsel was aware of the facts in dispute and any ruling in favor of Defendant would have weakened the State's case and may have been dispositive. Defendant asserts an evidentiary hearing is warranted on this claim.

After reviewing the allegations, the State's response, Defendant's reply, the court file, and the record, the Court found "[t]he trial court's ruling on a motion to suppress is a mixed question of law and fact." *Panter v. State*, 8 So. 3d 1262, 1265 (Fla 1st DCA 2009) (quoting *Brye v. State*, 927 So. 2d 78, 80 (Fla. 1st DCA 2006)). "On a motion to suppress, the trial judge's role is to weigh the credibility of the witnesses and resolve the evidentiary conflicts." *Pavon v. State*, 12 So. 3d 287, 287 (Fla. 3d DCA 2009). The Court found neither the State's response, nor the record, refuted his allegation that his counsel was ineffective for failing to suppress the false confession. As such, the Court found Defendant was entitled to an evidentiary hearing on this claim.

After reviewing the allegations, the testimony, evidence, and arguments presented at the November 17, 2015, evidentiary hearing, the court file, and the record, the Court finds it relies on the evidentiary hearing testimony set out in [the other claims] and in this claim. The Court finds Ms. Moss'[s] testimony more credible than that of Defendant. Therefore, the Court finds based on Ms. Moss'[s] investigation of the facts, she determined that any alleged falsified evidence by the detective would have been properly addressed on cross-examination during the trial. The Court finds Ms. Moss determined that such

would not have been proper in a motion to suppress because it was just a "he said, she said" issue which cannot be raised in a motion to suppress and is more appropriately litigated at trial. However, the Court finds Defendant did not want to go to trial. Consequently, Defendant failed to prove that Ms. Moss acted deficiently or any resulting prejudice when she did investigate the alleged false information and was prepared to address any discrepancies at trial, but Defendant chose to enter a plea and did not want a trial. The Court further finds [ ] even if Ms. Moss [had] filed the alleged motion to suppress evidence, it would have been denied. As such, no relief is warranted upon [the claim].

The post-conviction court found trial counsel more credible than Micciche at the evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Raheem*, 995 F.3d at 929. The state court accurately summarized trial counsel's testimony at the evidentiary hearing. (Doc. 12-3 at 67–68, 70–71, 84–85) Trial counsel testified as follows (Doc. 12-3 at 70–71):

| [Prosecutor:] | Did you discuss with your client — |
|---|---|
| [Trial counsel:] | Uh-huh. |
| [Prosecutor:] | — the possibility of filing a motion to suppress the statements that were contained in the police reports? |
| [Trial counsel:] | We may have discussed — I mean, but there was not a suppression issue. He said he didn't say it and she said he did say it. It's not an unconstitutional taking of a statement. |
| [Prosecutor:] | Okay, and if he said she said as to the content of the statement? |
| [Trial counsel:] | That would be a trial issue. |
| [Prosecutor:] | Okay, and Mr. Micciche was clear he didn't want to proceed to trial, even to pursue that — that issue; is that correct? |

[Trial counsel:]          That's correct.

"*Giglio* error, which is a species of *Brady* error, exists when [ ] undisclosed evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." *Trepal v. Sec'y, Fla. Dep't Corrs.*, 684 F.3d 1088, 1107 (11th Cir. 2012) (internal quotations and citations omitted). "[B]ecause *Giglio* error is a type of *Brady* violation, the defendant generally must identify evidence the government withheld that would have revealed the falsity of the testimony." *United States v. Stein*, 846 F.3d 1135, 1147 (11th Cir. 2017).

Micciche identifies no evidence that the prosecutor withheld that would have proven that the prosecutor intended to present false testimony at trial. He instead contends that the detective lied in the police report by stating that Micciche confessed to the crimes. Micciche challenged the content of his statements to the detective, not the manner that the detective secured those statements. (Doc. 12-3 at 70–71) To challenge the detective's recollection, trial counsel could have only called Micciche as a witness at trial to rebut the detective's testimony concerning the confession. Consequently, a pre-trial motion to suppress would not have succeeded, and trial counsel was not ineffective. *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 348 (2006) ("We have applied the exclusionary rule primarily to deter constitutional violations. In particular, we have ruled that the Constitution requires the exclusion of evidence obtained by certain violations of the Fourth Amendment, and confessions exacted by police in violation of the right against compelled self-incrimination or due process.") (citations omitted). *Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d 1290, 1297 (11th Cir. 2017) ("[A]n attorney will not be held to have performed deficiently for failing to perform a futile act, one that would not have gotten his client any relief.").

Also, the trial prosecutor would have withdrawn the 10-year offer if the defense wanted to litigate (Doc. 12-3 at 68, 77) and Micciche told trial counsel that he did not want to go to trial. (Doc. 12-3 at 70–71) Because the prosecutor would have withdrawn the 10-year offer that Micciche wanted to accept, trial counsel reasonably refrained from filing the motion to suppress and the state court did not unreasonably apply *Strickland*. *Strickland*, 466 U.S. at 687–88.

Ground Three is **DENIED.**

**Ground Four**

Micciche asserts that trial counsel was ineffective for not deposing witnesses who would have exculpated Micciche. (Doc. 1-1 at 19–22) The post-conviction court denied the claim as follows (Doc. 12-3 at 126–29) (state court record citations omitted):

> . . . Defendant alleges ineffective assistance of counsel due to counsel's failure to depose State and defense witnesses who would have provided exculpatory testimony and doubt regarding the allegations against Defendant and the reliability of the State's evidence. Specifically, Defendant alleges he has always maintained his innocence regarding allegations of knowingly and intentionally viewing child pornography and videotaping his underage step-daughter for illicit purposes. He alleges his counsel was aware of such, but advised him that due to the evidence against him and the statements made to detectives, it was the "perfect storm" and his innocence did not matter, thereby leaving the acceptance of a plea to be in his best interest.
>
> He alleges his counsel chose to ignore his innocence and assisted the State in securing a conviction. He alleges he accepted poor advice and entered into a negotiated plea agreement because he was ignorant to the law, did not know that a viable defense existed, that a trial strategy could have been developed, and that false evidence could have been suppressed. He alleges his counsel advised him that if his family members became involved, they may also be charged with a crime. He alleges his counsel failed to depose the detectives. He alleges had his counsel succeeded in proving through

depositions that the police reports were falsified, there is a reasonable probability that the outcome of the entire proceeding would have been different. He further alleges had his counsel deposed family members regarding the allegations against Defendant, it may have become evident that the elements required to prove the crimes charged could not be proven. He alleges had his counsel conducted pretrial depositions, it is probable an effective attorney would have been able to use the testimony and develop a viable defense strategy. He alleges had this occurred, Defendant would not have felt compelled to enter a plea[ ] but would have insisted on proceeding to trial with a reasonable expectation of acquittal. After reviewing the allegations, the court file, and the record, the Court found Defendant's allegations were facially sufficient and ordered the State to respond.

In its response, the State asserted with respect to the allegation of failure to depose law enforcement, Defendant alleges had counsel taken the depositions, counsel would have succeeded in proving the police reports were falsified and the outcome of the proceedings would reasonably, likely been different. The State asserted while depositions may be an effective tool for discovery, nothing requires an attorney to engage in such discovery. The State asserted their usefulness for purposes of proof as envisioned by Defendant is speculative. The State asserted Defendant's contention that depositions of officers or detectives would have resulted in the establishment of the falsity of the report of the confession presumes law enforcement would have admitted as such. The State asserted this presumption is speculative at best and this portion of [the claim] should be denied. Lastly, the State asserted with respect to Defendant's claim that depositions of family members would have revealed the elements of the crimes charged could not be proven, it concedes to the need for an evidentiary hearing.

In his reply, Defendant asserted the only reason the conclusions are speculative is because his counsel failed to perform a required duty to investigate and prepare for trial by deposing State witnesses. After reviewing the allegations, the State's response, Defendant's reply, the court file, and the record, the Court found "[m]ere speculation regarding possible error is not enough to satisfy *Strickland*." *Bruno v. State*, 807 So. 2d 55, 67 (Fla. 2001). However, "*Bruno*'s statement concerning 'mere speculation' is an assessment of particular evidence adduced at an evidentiary hearing." *Rangel-Pardo v. State*, 879 So. 2d 19, 20

(Fla 2d DCA 2004). Therefore, the Court found Defendant was entitled to an evidentiary hearing on this claim.

At the hearing, Ms. Moss testified she did not perceive any reasonable likelihood of getting the police officers to change what was included in the police reports. She further testified as follows:

[Trial counsel:]  . . . I mean, so initially, I get the police report; I review it with David. Most of what was in there, I mean, other than the fact that he said he didn't — he thought these files had ended up [on] his computer somehow through this Hotwire, FrostWire, peer-to-peer file sharing, it was correct. One thing he disagreed with was that he disagreed that he stated he had masturbated to the child porn. I asked Detective Grow when I went down there to view these things. I said, "Are you sure that he said that or he just didn't admit that he had a pornography problem in general and he masturbated to pornography?" She was 100 percent, "No, I specifically asked about the child porn. We don't really care about the adult porn . . . ."

She testified *Miranda* was not an issue.

After reviewing the allegations, the testimony, evidence, and arguments presented at the November 17, 2015, evidentiary hearing, the court file, and the record, the Court finds it relies on the evidentiary hearing testimony set out in [the other claims] and this claim. The Court finds Ms. Moss'[s] testimony more credible than that of Defendant. Therefore, the Court finds Ms. Moss thoroughly counseled Defendant regarding the charges, the penalties, and the evidence against him. The Court finds Ms. Moss did not depose the police officers because she did not believe they were going to change their version of the facts. The Court finds Ms. Moss was willing to go to trial, but Defendant chose to enter the plea and never wanted to go to trial. Consequently, the Court finds Defendant failed to prove that Ms. Moss acted deficiently or any resulting prejudice when after discussing charges, penalties, evidence against him[,] and the State's offer to dispose of all charges, Defendant made the

> decision to accept the negotiated plea and never indicated to her that he wanted to go to trial. As such, no relief is warranted upon [the claim].

The post-conviction court found trial counsel more credible than Micciche at the evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Raheem*, 995 F.3d at 929. The state court accurately summarized trial counsel's testimony at the evidentiary hearing. (Doc. 12-3 at 84–85)

Trial counsel testified that she could not depose Micciche's step-daugher because the trial prosecutor would withdraw the global 10-year offer (Doc. 12-3 at 77):

| [Prosecutor:] | . . . Did you yourself ever speak with [K.T.]? |
|---|---|
| [Trial counsel:] | No. |
| [Prosecutor:] | Why was that? |
| [Trial counsel:] | I was told if we spoke to [K.T.], that deal was off the table. Her father came to many of the hearings. Um, we were told if we attempted to talk to [K.T.] that that offer of ten years would be withdrawn immediately. |

. . .

| [Prosecutor:] | Who — who told you that? |
|---|---|
| [Trial counsel:] | Courtney Derry and Rita Peters said, "If you attempt to talk to [K.T.], she — we view her as a victim, and if you attempt to talk to her or take her deposition, we are in litigation mode, and there will be no offers." |
| [Prosecutor:] | Did you advise Mr. Micciche of that fact? |
| [Trial counsel:] | Yes. Yes. |

Trial counsel testified that the police report stated that other family members denied using the computer and trial counsel spoke with Micciche's wife to confirm (Doc. 12-3 at 89–90):

| | |
|---|---|
| [3.850 counsel:] | And what evidence would the State have had that it was Mr. Micciche who inputted that search? |
| [Trial counsel:] | Well, you could tell the time, because, based on — you can tell the time and the date that these searches occurred. |
| [3.850 counsel:] | Yes. |
| [Trial counsel:] | And, according to what was in the police report and what was — seemed to be undisputed by Mr. Micciche and his family is that this — this is the only computer that was password protected and this would have been the time period where he would have been the only person with access to that computer. |
| [3.850 counsel:] | Okay, and that's based on information that the State knew? |
| [Trial counsel:] | Uh, it's in the police report, because they went to every single family member and said, "Which computer do you use?" and they all said that's his computer; it's password protected; we're not allowed to use it. |
| [3.850 counsel:] | Okay. |
| [Trial counsel:] | And my discussions with his family. |
| [3.850 counsel:] | So what family member told you that? |
| [Trial counsel:] | I believe Sally Peyton, his wife. |
| [3.850 counsel:] | Sally Peyton told you that the computer was password protected and that no other family member used it? |

| | |
|---|---|
| [Trail counsel:] | That's correct. She used the laptop. |
| [3.850 counsel:] | Okay, I don't care what computer she used. What I'm asking you is — |
| [Trial counsel:] | Uh-huh. |
| [3.850 counsel:] | — Sally Peyton told you that the computer where the child pornography was located was password protected and nobody else used it? |
| [Trial counsel:] | Yes. That — we had that discussion with her present, yes. |

Trial counsel further testified that she discussed with Micciche calling his family members as witnesses at trial but Micciche ultimately decided to plead guilty (Doc. 12-3 at 83–84):

| | |
|---|---|
| [Prosecutor:] | Did you discuss with your client the possibility of calling other family members to say that they were aware video cameras had been set up in the house and things of that nature? |
| [Trial counsel:] | I was aware that they — that there were people who were willing to come in and say there were video cameras set up. |
| [Prosecutor:] | And you in fact had investigated that? |
| [Trial counsel:] | Uh-huh. I believe it's in the police report that people acknowledged that there were — that they knew that video cameras were set up in the house, yes. |
| [Prosecutor:] | And even after discussing all of that, had he indicated he was willing to enter his plea after all? |
| [Trial counsel:] | Yes. Yes. |

Lastly, trial counsel testified that Micciche disputed the statement in the police report that he had told the detective that he masturbated to child pornography. (Doc. 12-3 at 84) Trial counsel met and asked the detective whether the detective was certain that Micciche made that statement. (Doc. 12-3 at 84) The detective responded that she was "100 percent" certain that Micciche made that statement. (Doc. 12-3 at 84)

If trial counsel deposed witnesses, the prosecutor would withdraw the 10-year offer that Micciche wanted to accept. Trial counsel learned relevant information by interviewing witnesses instead of deposing them. Consequently, trial counsel reasonably investigated Micciche's case and the state court did not unreasonably deny the claim. *Strickland*, 466 U.S. at 690–91 ("[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *Rogers v. Zant*, 13 F.3d 384, 387 (11th Cir. 1994) ("The district court's opinion suggests that 'thorough investigation' must precede all strategic decisions or the decision will probably be ineffective in the constitutional sense. But this view seems incorrect to us. By its nature, 'strategy' can include a decision not to investigate. *Strickland* indicates clearly that the ineffectiveness question turns on whether the decision not to make a particular investigation was reasonable.") (citations omitted).

Ground Four is **DENIED**.

**Ground Five**

Micciche asserts that trial counsel was ineffective for not explaining the elements of possession of child pornography. (Doc. 1-1 at 23–24) The post-conviction court denied the claim as follows (Doc. 12-3 at 130–33) (state court record citations omitted):

> . . . Defendant alleges ineffective assistance of counsel due to counsel's failure to adequately explain the elements of

possession of child pornography. Specifically, he alleges in order to be convicted of possession of child pornography, the State must prove Defendant knowingly possessed or intentionally viewed an image that Defendant knew to include any sexual conduct by a child. He alleges during his initial conference with his counsel, he explained to his counsel that he did not intentionally possess or view images containing child pornography. He alleges he surmised if these images were contained on his computer, it occurred accidentally either at the time he was viewing adult pornography, or through the use of used computer parts he obtained when building his own computer.

However, he alleges his counsel advised him that the fact that depictions of child pornography were allegedly found on a computer he used was sufficient to establish he committed the offenses. He alleges his counsel never explained that the offense required proof of knowingly possessing or intentionally viewing. He alleges had his counsel fully advised him of the elements of the offense of possession of child pornography, he would not have entered a guilty plea to the offenses and would have exercised his right to a jury trial.

In its May 28, 2015, order, the Court found Defendant's allegations were facially sufficient and could not be conclusively refuted from the record. Therefore, the Court ordered the State to respond to this claim.

In its response, the State asserted because the nature of the claim raised necessitates inquiry into matters not contained within the record, it concedes to the need for an evidentiary hearing on this claim. After reviewing the allegations, the State's response, the court file, and the record, the Court found Defendant was entitled to an evidentiary hearing on this claim.

At the evidentiary hearing, Defendant testified Ms. Moss did not explain to him that in order to be found guilty of child pornography, the State would have to prove he knowingly possessed or intentionally viewed child pornography. He admitted he told Ms. Moss that he did not knowingly possess or intentionally view images of child pornography. He testified she told him if he clicked on it, then he owned it. He denied seeing the images the State said were on his computer.

However, he admitted to explaining to Ms. Moss how the images might have appeared. When asked what he told Ms.

Moss, he responded, "[s]everal — a couple of them I did admit to accidentally clicking on and I deleted it before the image downloaded, and I also explained that, you know, this was a computer that was used by many people, including several teenage boys, neighbors." He testified if Ms. Moss had explained to him that the State had to prove he knowingly possessed or intentionally viewed the images of child pornography, he would have gone to trial.

Ms. Moss admitted she discussed with Defendant in detail whether or not he knowingly possessed or intentionally viewed these images. She admitted she explained to Defendant the elements of child pornography going directly to the statute and reading it together and looking at jury instructions.

On cross-examination, she admitted she explained to him that he had to intentionally possess the child pornography. She testified his original version of events was that he did not intentionally possess child pornography. However, when asked if he ever stated to her that he intentionally possessed child pornography, she testified as follows:

[Trial counsel:]   He never came out and said, "I — I — I'm coming clean. I downloaded this stuff." When I confronted him with what my expert — when I said, "Listen, David, this is what my expert is saying," he would then switch, "Well, I hadn't been through my counseling. I might have done that when I wasn't through with my counseling," so it kind of went back and forth between — he — he placed a lot of emphasis on the counseling with his pastor.

She testified Defendant told Detective Grow that he would view them and then quickly delete them. When asked if that would have been indicative of not having an intent to view child pornography, she responded, "[e]xcept for the searches that were clearly — that my expert — and I honestly didn't know anything about this until my expert looked at this and said, "Debbie, he's actively searching a lot for Lolita, preteen hard core."

She testified the police report indicated and it was undisputed by Defendant and his family that it was the only computer that

was password protected and it was the time period when Defendant was the only person with access to that computer. She testified Defendant's wife told her the computer was password protected and no other family member used it. When asked if Defendant indicated he did not want to go to trial, she responded as follows:

> [Trial counsel:]   He — well, I explained to him, you have the right to go to trial. They will have to prove that you intentionally downloaded images that you knew to be child pornography and then it's up to the jury to view those images; make the determination that they are in fact child pornography, and he said he did not want to do that; that he was afraid of the outcome.

After reviewing the allegations, the testimony, evidence, and arguments presented at the November 17, 2015, evidentiary hearing, the court file, and the record, the Court finds it relies on the evidentiary hearing testimony set out in [the other claims] and in this claim. The Court finds Ms. Moss'[s] testimony more credible than that of Defendant. Therefore, the Court finds Ms. Moss adequately explained to Defendant the elements of possession of child pornography, including that he had to have knowingly possessed or intentionally viewed child pornography. The Court finds although Defendant admitted to Ms. Moss that he had a pornography problem, he did not admit to viewing child pornography.

However, the Court finds Ms. Moss hired an expert who advised her that the computer in question showed several active searches for child pornography during the time period in question. The Court finds Defendant did not indicate to her that anyone else had access to that computer during the time period in question. Consequently, the Court finds Defendant failed to prove that Ms. Moss acted deficiently or any resulting prejudice when Ms. Moss adequately explained to Defendant the elements of child pornography, including that the State must prove Defendant knowingly possessed or intentionally viewed an image that Defendant knew to include any sexual conduct by a child. As such, no relief is warranted upon [this claim].

The post-conviction court found trial counsel more credible than Micciche at the evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Raheem*, 995 F.3d at 929. The state court accurately summarized trial counsel's testimony at the evidentiary hearing. (Doc. 12-3 at 85–91)

Trial counsel testified that she and her clients review both the statute for the crime charged and the relevant jury instruction. (Doc. 12-3 at 85) Trial counsel explained to Micciche that the prosecution had to prove that he intentionally possessed the child pornography. (Doc. 12-3 at 86) Micciche denied to trial counsel that he intentionally viewed the child pornography but told the detective that he had viewed and quickly deleted child pornography. (Doc. 12-3 at 86, 88) Trial counsel retained an expert who discovered that someone had searched for child pornography on the computer during the relevant period of the child pornography charges. (Doc. 12-3 at 57–58, 88–89) When trial counsel confronted Micciche with the expert's finding, Micciche did not deny that he had searched for the child pornography but claimed that he had not yet finished counseling with his pastor. (Doc. 12-3 at 86) The police report stated that Micciche's family members denied ever using the computer. (Doc. 12-3 at 89–90) Trial counsel interviewed Micciche's wife who confirmed that no other family member had used the computer. (Doc. 12-3 at 90)

Also, Micciche signed a change of plea form which stated: "I certify that I have discussed the charges with my attorney including . . . possible defenses and am fully satisfied with the representation of my attorney." (Doc. 12-3 at 145) At the change of plea hearing, Micciche confirmed under oath that he signed the form, had sufficient time to review the form with trial counsel, understood the form, and had no questions about the form. (Doc. 12-3 at 157) Micciche's representations under oath at the hearing are presumed truthful.

*Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *Thompson v. Wainwright*, 787 F.2d 1447, 1460–61 (11th Cir. 1986) ("We see little difference between the presumption of correctness under section 2254 and the 'strong presumption of verity' identified by the Supreme Court in *Blackledge*.").

Because trial counsel explained the elements of the child pornography charges to Micciche and investigated whether Micciche intentionally viewed child pornography, the record refutes the claim and the state court did not unreasonably apply claim.

Ground Five is **DENIED.**

**Ground Six**

Micciche asserts that trial counsel was ineffective for not moving to sever the video voyeurism counts from the possession of child pornography counts. (Doc. 1-1 at 25–26) The post-conviction court denied the claim as follows (Doc. 12-3 at 134–38) (state court record citations omitted):

> . . . Defendant alleges ineffective assistance of counsel due to counsel's failure to move to sever the voyeurism counts from the possession of child pornography counts. Specifically, he alleges he was charged in counts one through ten with possession of child pornography and in counts eleven through fourteen, he was charged with video voyeurism. He alleges the first ten counts allegedly related to allegations that he accessed the internet and obtained images of child pornography. He alleges the information alleged these offenses occurred on April 24, 2012.
>
> He alleges counts eleven through fourteen related to allegations arising out of the discovery of a video tape that allegedly showed two video recordings of Defendant's step-daughter. He

alleges the State's theory was that he set up a video camera in his step-daughter's room and surreptitiously recorded her while she was undressed. He alleges it appears undisputed that at the time Defendant was charged with the offense, his step-daughter was eighteen years old and[,] at the time of the recording, she was twelve years old.

He alleges he explained to the police and his counsel that he had set up a camera in his step-daughter's room six years earlier to catch his son who was suspected of stealing from family members. He alleges he explained he had no knowledge of the recording or that an edited version of any recording had been produced. He, relying on section 827.071(5)(a), Florida Statutes, alleges the image of his step-daughter on the video does not constitute child pornography because it does not depict a child engaged in sexual conduct. He alleges due to the length of time between the event depicted on the video recording and the alleged possession of child pornography, and the dissimilarity between the offense of video voyeurism and possession of child pornography, severance of the offense[s] would have been appropriate. However, he alleges his counsel failed to move to sever the offenses and failed to advise Defendant of this option.

He alleges he was prejudiced because he pled guilty to crimes he did not commit and gave up his right to trial on those charges. He alleges counts thirteen and fourteen also related to the video recording of his step-daughter. He alleges counts thirteen and fourteen were *nolle prossed* by the State because there was no evidence to support those charges. He alleges it is assumed that had his counsel moved to sever, the State would have still exercised its professional responsibility and dismissed these charges.

In its May 28, 2015, order, the Court found Defendant's allegations were facially sufficient and could not be conclusively refuted from the record. Therefore, the Court ordered the State to respond to this claim.

In its response, the State asserted Defendant has failed to establish prejudice. The State asserted he pled guilty to the voyeurism charges, but he does not allege how counsel's failure to sever the trial of the voyeurism charges from that of the pornography charges affected his decision to plead guilty to the voyeurism charges. The State asserted whether counsel should or should not have moved to sever the trials of the differing

charges is an issue that only becomes relevant upon Defendant in fact exercising his right to trial. The State asserted Defendant did not exercise his right to trial and, therefore, this claim should be denied.

After reviewing the allegations, the State's response, the court file, and the record, the Court found Defendant alleged ineffective assistance of counsel due to counsel's failure to move to sever the voyeurism counts from the possession of child pornography counts. The Court found Defendant further alleged his counsel failed to advise him of the option to sever the charges. The Court found Defendant alleged he was prejudiced because he pled guilty to crimes he did not commit and gave up his right to trial on those charges. The Court found Defendant has alleged prejudice as he alleges he would not have pled to the video voyeurism charges if he knew they could have been severed from the other charges. Because this claim may involve attorney/client communications outside of the record, the Court found Defendant was entitled to an evidentiary hearing on this claim.

At the evidentiary hearing, Defendant testified if Ms. Moss had told him that the video voyeurism charges could be separated from the possession of child pornography charges, he would have gone to trial. He admitted he ended up pleading guilty and being sentenced for crimes he did not commit.

Ms. Moss testified Defendant never expressed any interest in going to trial. However, she testified, "[i]f we were going to try the case, obviously, the State gets to determine what — what gets tried first. I don't believe they would have tried the video voyeurism, and had we been proceeding to trial on the possession of child pornography, we clearly would have severed out the video voyeurism." She admitted the State's offer was conditioned upon not taking [K.T.'s] deposition and conditioned on resolving all counts. Therefore, she testified she believed if Defendant wanted to go to trial on the video voyeurism counts, he would have had to go to trial on the child pornography counts and she explained that to Defendant.

Ms. Moss testified Defendant was not willing to sever the charges because although he did not like the offer, he did not want to go to trial. She testified she was then told that Defendant was going to hire Mr. Lauro and she was actually grateful at that point. She testified she was aware that family members were willing to testify that they were aware video

cameras had been set up in the house and she believed the police report indicated people acknowledged they knew the cameras were set up in the house. However, she testified despite that fact, Defendant indicated he was willing to enter the plea after all.

After reviewing the allegations, the testimony, evidence, and arguments presented at the November 17, 2015, evidentiary hearing, the court file, and the record, the Court finds it relies on the evidentiary hearing testimony set out in [the other claims] and this claim. The Court finds Ms. Moss'[s] testimony more credible than that of Defendant. Therefore, the Court finds Defendant was not willing to sever the charges because although he did not like the offer, he did not want to go to trial. The Court finds Defendant was aware of the possibility of severing the charges. However, the Court finds because the State's offer was to resolve all charges, if Defendant chose to go to trial on the video voyeurism charges, he had to go to trial on the possession of child pornography charges. The Court finds Defendant never indicated to Ms. Moss that he wanted to go to trial on any of the charges. Consequently, the Court finds Defendant failed to prove that Ms. Moss acted deficiently or any resulting prejudice when Defendant did not want to sever the charges and go to trial, but chose to accept the State's negotiated plea offer which included disposition of all charges. The Court finds as long as Defendant maintained that he did not want to go to trial and wanted to accept the plea, severance was not an option because if they chose to sever, depose [K.T.], and litigate the video voyeurism charges, the State's plea offer was off the table. As such, no relief is warranted upon [this claim].

The post-conviction court found trial counsel more credible than Micciche at the evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Raheem*, 995 F.3d at 929. The state court accurately summarized trial counsel's testimony at the evidentiary hearing. (Doc. 12-3 at 67, 70–71, 81–84)

Trial counsel testified that the prosecutor offered 10 years of prison and 10 years of probation in exchange for a guilty plea on both the child pornography possession charges and the video voyeurism charges. (Doc. 12-3 at 68, 82) The prosecutor would withdraw the

offer if Micciche "wanted to litigate." (Doc. 12-3 at 68) Trial counsel testified that she could have moved to sever the video voyeurism counts, but the prosecutor would have withdrawn the offer and likely chosen to proceed to trial first on the child pornography charges. (Doc. 12-3 at 81–83) Micciche told trial counsel that he did not want to go to trial, even though he did not like the offer. (Doc. 12-3 at 68, 70, 71, 83)

Also, Micciche told trial counsel that he had placed the camera in the bedroom to catch his son stealing. (Doc. 12-3 at 71) Trial counsel viewed the video and observed no clips of other individuals clothed completing routine tasks. (Doc. 12-3 at 71, 73–76) Relying on her experience as a trial lawyer, trial counsel advised Micciche that a jury would not believe that he installed the camera to catch his son stealing. (Doc. 12-3 at 76, 80–81) The step-daughter testified that she knew that Micciche had placed a camera in her bedroom but denied knowing that the camera recorded her coming out of the shower. (Doc. 12-3 at 37) The step-daughter explained that she must have forgotten that the camera was in her bedroom. (Doc. 12-3 at 37) Both the edited video and the step-daughter's testimony tended to prove that Micciche recorded the 12-year-old victim undressed for his own sexual arousal and gratification without her knowledge and consent. § 810.145(2)(a), Fla. Stat. (2009).

Micciche faced an aggregate sentence of 150 years for the ten counts of possession of child pornography. (Doc. 12-3 at 155–56) §§ 827.071(5) and 775.0847(2), Fla. Stat. (2012). Micciche would not have rejected the significantly reduced 10-year offer and exposed himself to 150 years only to assert a weak defense at a bifurcated trial on the video voyeurism charges. *Hill*, 474 U.S. at 59–60.

Because Micciche wanted to accept the global plea offer and the prosecutor would have withdrawn that offer if trial counsel moved to sever the video voyeurism counts, trial

counsel reasonably refrained from filing the motion to sever and the state court did not unreasonably apply *Strickland*. *Strickland*, 466 U.S. at 687–89.

Ground Six is **DENIED**.

**Ground Seven**

Micciche asserts that trial counsel was ineffective for advising Micciche to plead guilty to the possession of child pornography charges because no evidence supported the charges. (Doc. 1-1 at 27–29) The post-conviction court denied the claim as follows (Doc. 12-3 at 138–42) (state court record citations omitted):

> . . . Defendant alleges ineffective assistance of counsel when counsel allowed Defendant to plead guilty to offenses when there was no evidence to prove the offenses of possession of child pornography. Specifically, he alleges the police report reflects law enforcement officers seized a number of items of electronic equipment from Defendant's home pursuant to a search warrant. He alleges the only item that produced information of evidentiary value was the computer located in Defendant's office. He alleges the police report reflects law enforcement reviewed a report for the computer registry, including viewing a "Google Chrome History," a "Typed URL History Internet Explorer report," a "Keywords report," a "Google Web typed text report," and a "Frostwire Props File 3-12-12," and "4-16-12." He alleges although these searches revealed titles of files that appear to describe child pornography, there is nothing in the police report to indicate these titles actually depicted images of child pornography contained on Defendant's computer.
>
> Defendant alleges the police report also indicates an examination was done of the "unallocated space" on Defendant's computer and images were located which did appear to depict child pornography. However, he alleges "unallocated space" is miscellaneous data that is left from previous installations of Windows software. He alleges he built and sold computers and would frequently utilize used parts when making his own computers. Therefore, he alleges the fact that images purported to have been child pornography were located on the unallocated space of his computer does not establish that he 1) placed the images there, or 2) knew the

images were located there as these images, if they exist, were contained on a portion of the computer that had come from someone else's computer.

However, he alleges his counsel took the position that Defendant was guilty of the offense[s] simply because images were allegedly located on his computer without consideration for the knowledge and intent elements of the offense and allowed him to enter a guilty plea when there was insufficient evidence to support a finding of guilt. He alleges had his counsel properly advised him, he would not have entered a guilty plea and would have exercised his right to go to trial.

In its May 28, 2015, order, the Court found Defendant's allegations were facially sufficient and could not be conclusively refuted from the record. Therefore, the Court ordered the State to respond to this claim.

In its response, the State asserted the record refutes this claim. Specifically, the State, relying on the August 27, 2013, transcript asserted at the time of Defendant's plea, the State's factual basis included, "[p]ost *Miranda*, the defendant admitted to downloading the child pornography and to viewing the child pornography at times, deleting it after he would view it. The defendant can be identified and all events occurred in Hillsborough County." Therefore, the State asserted, contrary to Defendant's assertion, there was evidence to prove the charges of child pornography and some of that evidence included Defendant's own statements. As such, the State asserted this claim should be denied.

After reviewing the allegations, the State's response, the court file, and the record, the Court found the State was relying on the factual basis provided at the plea hearing. However, the Court found "[i]n establishing a factual basis, the prosecutor is reporting facts obtained from the witnesses to the offense, and thus the prosecutor's statements constitute hearsay." *Speas v. State*, 887 So. 2d 416, 418 (Fla 2d DCA 2004); *see also Neal v. State*, 697 So. 2d 903, 906 (Fla. 2d DCA 1997) (holding that the prosecutor's reporting of facts developed by a third party constitutes hearsay). The Court found if the State read the factual basis from the criminal report affidavit, such is also hearsay as the information contained in police reports is ordinarily considered hearsay and inadmissible in an adversarial criminal proceeding. *See Burgess v. State*, 831 So. 2d 137, 140, 142 (Fla. 2002) (finding that "the information

48

contained in police reports is ordinarily considered hearsay and inadmissible in an adversary criminal proceeding" and that "there would be great mischief in treating such reports as undisputed facts for purposes of a rule 3.800(a) motion.") Because the Court was unable to conclusively refute Defendant's allegations from the limited record, the Court found Defendant was entitled to an evidentiary hearing on this claim.

At the evidentiary hearing, Defendant admitted computer equipment was seized from his home pursuant to a search warrant and described the equipment as a regular computer tower, a server computer, many pieces of electronic equipment, I-pads, I-phones, video cameras, digital cameras, and all his recording media. He testified he owns a home theatre company and sells and installs media servers and computers. He further testified he builds computers for clients, sells and installs home theatre systems, and sells and installs surveillance systems.

However, he denied that any of that equipment contained depictions of child pornography. He testified it was his understanding that only one computer (identified in the police report as exhibit 2) produced information of evidentiary value. However, he denied knowing what evidence the State alleged was on the computer. Defendant explained what unallocated space is, but denied knowing what was contained on the unallocated space on his computer because he had used parts from other clients to build his personal computers. He admitted it was possible that the unallocated space contained things put there by someone independent of anyone in his family. He testified if he had known the State did not actually have evidence that he was in possession of child pornography, he would have chosen to go to trial.

On cross-examination, he admitted he advised Ms. Moss about the existence of the unallocated space at the time they discussed the discovery. However, he did not remember whether he told Ms. Moss that the particular hard drive consisted of parts that had been rebuilt from other computers or other programs. He also did not remember whether he told her when the prior software installations might have occurred.

After reviewing the allegations, the testimony, evidence, and arguments presented at the November 17, 2015, evidentiary hearing, the court file, and the record, the Court finds it relies on the evidentiary hearing testimony set out in [the other

claims] and in this claim. The Court finds Ms. Moss'[s] testimony more credible than that of Defendant. Therefore, the Court finds based on her investigation of the facts of the case, her discussions with Defendant that he was the only one who used the computer, his admissions to her that he did download and view adult pornography, her review of all discovery, her discussions with computer expert Mr. Magliano, and her review of Mr. Magliano's January 20, 2013, letter, Ms. Moss believed there was sufficient evidence to prove the possession of child pornography counts, did not believe Defendant had any defenses to the possession of child pornography counts, and feared there was additional data that could be included at trial. The Court finds Ms. Moss advised Defendant of all the above, and Defendant chose to enter the plea and never indicated to her that he wanted a trial on any charges. Consequently, the Court finds Defendant failed to prove that Ms. Moss acted deficiently or any resulting prejudice when there was sufficient evidence to prove the offenses of possession of child pornography and Defendant never indicated to her that he wanted to go to trial on those charges. As such, no relief is warranted upon [the claim].

The post-conviction court found trial counsel more credible than Micciche at the evidentiary hearing, and a state court's credibility determination receives deference in federal court. *Raheem*, 995 F.3d at 929. The state court accurately summarized trial counsel's testimony at the evidentiary hearing.

Trial counsel learned that police traced the transfer of child pornography from a server in Wyoming to Micciche's internet service. (Doc. 12-3 at 53–54, 56) Police executed a search warrant at Micciche's home and discovered child pornography on a computer. (Doc. 12-3 at 49) A detective claimed that Micciche admitted to masturbating while viewing child pornography. (Doc. 12-3 at 84) Micciche told trial counsel that he was the only person who used the password-protected computer. (Doc. 12-3 at 51–53, 55, 61) Trial counsel interviewed Micciche's wife who denied that any other person used the computer. (Doc. 12-3 at 90)

Trial counsel retained an expert who reviewed the discovery in the case and discovered that around the time of the charged offenses someone had typed on the computer "PTHC," "preteen hard core," "Lolita," and other terms to search for child pornography on the internet. (Doc. 12-3 at 57–58, 64) The expert advised that the searches "were plentiful, and that there were many, many, many, many images." (Doc. 12-3 at 64) The expert could not find any defenses to the child pornography possession charges and expressed surprise that the prosecutor did not charge additional counts based on other images in discovery. (Doc. 12-3 at 59–60, 78)

Trial counsel personally viewed the images that police found on Micciche's computer and described them as follows (Doc. 12-3 at 65):

> [Trial counsel:]   There was a baby in diapers being digitally penetrated. There were obviously prepubescent children engaged in sexual acts; specifically oral sex, giving a grown male oral sex. There was, I believe, also an image of a prepubescent — what appeared to be a prepubescent child being, um, penetrated by an adult penis.

The type of child pornography that trial counsel observed matched the types of search terms on the computer. (Doc. 12-3 at 65)

Micciche never mentioned that he could have unknowingly purchased old parts with child pornography to build his computer. (Doc. 12-3 at 55) Micciche claimed that he accidentally downloaded the child pornography while downloading other large lawful audio and video files. (Doc. 12-3 at 54–55) The transfer of child pornography from a server in Wyoming to Micciche's computer and the matching search terms for child pornography on his computer ruled out this defense. (Doc. 12-3 at 66, 78)

Relying on the statements by Micciche, the computer expert's investigation, and interviews of witnesses and review of the discovery, trial counsel stipulated to the following factual basis at the change of plea hearing (Doc. 12-3 at 158–59):

> [Prosecutor:]    April the 24th of 2012, a court-authorized search warrant was executed on the residence where the defendant lived. The results of the search warrant produced numerous images of child pornography located on the computer that was password protected and utilized by the defendant.
>
> . . .
>
> The child pornography that was found on the computer contained images of children under the age of ten and at various times. Also the content of the images meets the criteria for the second degree felony enhancement including containing at least one image of a child under the age of five or sexual battery or a movie within those images.
>
> Post-*Miranda*, the defendant admitted to downloading the child pornography and to viewing that child pornography at times, deleting it after he would view it. The defendant can be identified and all events occurred in Hillsborough County.

The trial court found that Micciche "freely and voluntarily" pled guilty and a factual basis supported the guilty plea. (Doc. 12-3 at 159)

Because the evidence tended to prove that Micciche "knowingly possess[ed]" and "intentionally view[ed]" child pornography, trial counsel was not ineffective for advising Micciche to plead guilty and the state court did not unreasonably apply *Strickland*. § 827.071(5), Fla. Stat. (2012). *Blackledge*, 431 U.S. at 73–74. *Jenrette-Smith v. State*, 114 So.

3d 427, 430 (Fla. 2d DCA 2013) ("When contraband is found in jointly occupied premises, constructive possession may be established through evidence that the defendant had actual knowledge of the presence of the contraband or evidence of incriminating statements or circumstances, other than simple proximity to the contraband, from which the jury could infer the defendant's knowledge of the contraband.") (internal quotations and citation omitted); *Anderson v. State*, 48 So. 3d 1015, 1018 (Fla. 5th DCA 2010) ("In a criminal prosecution, knowledge is rarely proven by direct evidence and may be proven through circumstantial evidence."); *Lara-Castillo v. State*, 244 So. 3d 354, 355 (Fla. 1st DCA 2018) ("[I]ntent is almost always established through circumstantial, rather than direct, evidence.").

Ground Seven is **DENIED**.

**Ground Eight**

Micciche asserts that the trial court's "sexual offender" designation at sentencing was illegal because he neither had a prior qualifying conviction nor was ever released from prison after serving a sentence for a prior qualifying conviction. (Doc. 1-1 at 30–31) The post-conviction court denied the claim as follows (Doc. 12-4 at 270–71) (state court record citations omitted):

> In Defendant's Motion, he argues that he does not qualify as a sexual offender under the requirements of Section 943.0435, Florida Statutes.
>
> The Court first finds that Section 943.0435, Florida Statutes, "contains no provision for a court order designating such offenders as sexual offenders; they attain that status merely by virtue of their convictions." *See Harvey v. State*, 17 So. 3d 890 (Fla. 4th DCA 2009). Pursuant to Section 943.0435, a sexual offender is someone who has been convicted of any certain criminal offenses specified in the statute, among which are convictions of Sections 827.071 and 810.145(8). *See* Fla. Stat.

> § 943.0435. Defendant was convicted of six counts in violation of Section 827.01[2] and two counts in violation of Section 810.145(8). As such, Defendant attained the status of sexual offender pursuant to his convictions. Contrary to Defendant's allegations, no prior convictions are required for the application of this designation. As such, Defendant's Motion is hereby denied.

Whether Micciche qualifies as a sexual offender under Section 943.0435, Florida Statutes is an issue of state law, and a state court's determination of state law receives deference in federal court. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("In the area of state sentencing guidelines in particular, we consistently have held that federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures.").

Micciche acknowledged in the plea agreement that: "[H]e shall be deemed a Sexual Offender and shall fulfill all requirements of [Section] 943.0435, Florida Statutes." (Doc. 12-3 at 151) By pleading guilty, Micciche waived any nonjurisdictional challenge to his convictions. *Tollett*, 411 U.S. at 267; *United State v. Brown*, 586 F.3d 1342, 1350 (11th Cir. 2009). Even so, Micciche pled guilty to child pornography possession in violation of Section 827.071, Florida Statutes (Doc. 12-3 at 171), and the sexual offender designation applies. § 943.0435(1)(h)(1)(a)(I), Fla. Stat.

Ground Eight is **DENIED**.

Accordingly, it is **ORDERED** that Micciche's petition (Doc. 1) is **DENIED** because all claims in the petition are without merit. The Clerk is **DIRECTED** to enter a judgment against Micciche and **CLOSE** this case.

---

[2] Micciche pled guilty to violations of Section 827.071, Florida Statutes. (Doc. 12-3 at 171)

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO PROCEED *IN FORMA PAUPERIS*

Because Micciche neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** in Tampa, Florida on August 31, 2021.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE